v. Lawson Software, Inc. v. Lawson Software, Inc. v. Lawson Software, Inc. v. Lawson Software, Inc. is number 13-1506, ePlus, Inc. v. Lawson Software, Inc., Mr. Perry. Thank you, Judge Dyke. May it please the court. Claim 26 of the 683 patent, Your Honors, has been canceled as unpatentable. It is void ab initio under this court's decision in proscenius, and as we stand before the court this morning, ePlus has no property rights and never has had any property rights enforceable against my client, Lawson. Yet Lawson, at this very moment, is judicially restrained from engaging in lawful activity and, even worse, stands under a judicial order compelling it to turn over the profits from its lawful activity to its competitor, its competitor who has no property rights. On the contempt sanctions, what's the best case you have? Is it the Steelworkers case from 1947 of the Supreme Court or any other authority? Absolutely, Your Honor. So we take it in two steps. The injunction we would submit cannot stand under any of this court's precedence, proscenius, Mendenhall, and so forth, and I don't think they argue otherwise. Once the injunction goes, then the contempt sanctions cannot stand. Which is the temper issue. Okay, so that's the holding of United Mine Workers. And let me focus first on the critical distinction that my friends on this side ignore in their briefs. There's a difference between criminal contempt and civil contempt. In a criminal contempt case, if the underlying injunction is vacated, the court can still enforce its order because it is vindicating the power of the court. The U.S. attorney has to prosecute that case. You get all the due process rights and a jury and so forth beyond a reasonable doubt standard. In a civil contempt case, if the underlying injunction is vacated or reversed, then the contempt sanctions disappear. That is the square holding of the Supreme Court of the United States in the Mine Workers case, which we have cited over and over again. The court in that case relied on the Warden v. Searles case, which is a patent case that I'd like to talk to you about. Did it in that case vacate the civil contempt there, or was it just the criminal? Obviously, they upheld the criminal. They upheld the criminal. And the key language, Your Honor, and I'd like to point out, in the 28J letter that EPLUS submitted most recently, it is said, quote, the Supreme Court actually awarded compensatory contempt damages. That is false. Let's look at what the Supreme Court actually said. At page 295, if the injunction is not warranted, quote, we would set aside the preliminary injunction and the judgment for civil contempt, but we would affirm the judgments for criminal contempt. So the court clearly draws the distinction between the two kinds of contempt. That comes from the Gompers case, Gompers v. Buck's Tool and Stove Company, which we've discussed in our briefs and my friends don't address, which also draws that distinction. The Supreme Court went on, and it's very clear in the case. Quote, it does not follow that simply because a defendant may be punished for criminal contempt for disobedience of an order that is later set upon an appeal that the plaintiff in the action may profit by way of a fine imposed in a simultaneous proceeding for civil contempt based on a violation of the same order. Now, that presupposes, though, does it not, that the injunction was void at an issue? That's right. That's why I started with the two-step answer to Judge Prost. So if we were to say that this is more akin to the circumstances where an injunction may have been properly entered in the first instance and is later, perhaps by an act of Congress or legislation, then the purpose of it abrogated. In those circumstances, the Supreme Court has said that compensatory civil contempt can continue to lie. Not quite right, Your Honor. The Supreme Court has never addressed that situation. The Eighth Circuit in that Coleman line of cases that he plus sides has said that prospective legislation does not affect a backwards-looking injunction. We have no such thing here. We have a judicial determination by this court confirming the invalidation. Judicial actions are always retrospective. The court said that in Landgraf and Harper v. Virginia Board of Taxation and so forth. This court's pronouncements have, they say what the law is, and the law is and always has been that there is no invention, no patent. The ruling of the PTO is not that the patent later became invalid, but that it was never patentable, that there is no invention in this case. And so there's legislative enactment cases. There's a basic distinction between legislation, which is prospective unless Congress says otherwise, that's the Landgraf case, and judicial action, which is always, it's not even right to call it retrospective. It just declares what the law is. And an injunction based on no property right is nothing at all. This court held exactly that in two cases, both of which involved injunctions. Mendenhall, which was an invalidation case, the injunction was entered and then the patent was invalidated in another court action. And this court reversed the injunction going back to the beginning correctly. And Translogic, unpublished, the same precedent, which was a cancellation case where the injunction, permanent injunction, was entered by the district court. The PTO then canceled, cancellation was affirmed by this court, and the injunction was reversed. Those are controlling precedents. Fresenius originally involved an injunction, too, of course. And Judge O'Malley, to your point, and also to Judge Prost, in your dissent from denial, Your Honor, in Fresenius, you have a very interesting footnote, footnote five, which talks about the Warden v. Searles case. This is the most important case for this particular lawsuit. My friends never cite it because they have no answer to it. Warden v. Searles was a patent case in the Supreme Court of the United States. The patent holder got a judgment of infringement and validity and fines and an injunction and a contempt sanction. It's exactly the facts of this case. Then the patent was invalidated. And what did the Supreme Court do? The Supreme Court vacated everything that had happened, and it said in language that is absolutely relevant here, because the fines were directed to be paid to the plaintiff, this is a direct quote, they were incidents of the claims in the suit. His right to them was, if it existed at all, founded on his right to the injunction, and that was founded on the validity of his patent. Does it matter that the Supreme Court addressed that in a direct appeal versus we have this issue where there was an appeal, you didn't even appeal the validity determination? I understand you rely on presidious, but my question is, is there a distinction here because we never vacated the lower court injunction and you didn't appeal validity? In Warden v. Searles as well, the invalidation was in a separate proceeding and the direct appeal from the contempt sanctions was where they were vacated. And this is a direct appeal. This is two direct appeals, Your Honor. We stand here today in two direct appeals that have been consolidated. The modified injunction, which we appealed as a matter of right, that this court has never reviewed, and the contempt sanctions, which we appealed as a matter of right, that this court has never reviewed. There's no final judgment that we're seeking to reopen. This is two direct appeals to this court as a matter of right, so there's no finality here. As to the question of the sequencing, that was true in Minden Hall. In fact, Minden Hall had a waiver issue on the validity that had previously been determined and invalidity was determined in a different case, and this court reversed the injunction. And the reason is, and this goes back, I believe, Judge Prost, to your original question, the difference between civil and criminal contempt, is because once the patent has been canceled and they have no property right, as this court said in Presenius, the cause of action is extinguished. The suit fails. It is moot. They have no standing. There is no Article III case or controversy between our clients at this point. There is no lawsuit. And there's no such thing there, Judge Malley, on a prospective abrogation in a lawsuit context because there never should have been a lawsuit at all. This patent never should have issued. They never should have sued us. We never should have had to spend millions of dollars on defense. We never should have had to redesign all of our products for a verdict that never should have issued. We never should have had to come to this court twice to have these patents invalidated. None of that should have happened. And the only remedy for that wrong, where my client is the victim here, is to vacate the whole shoot and match. Why didn't you appeal the validity determination the first time around? Well, Your Honor, we appealed the validity of the system claims, which were the drivers. On the method claims, it was our judgment that the evidentiary problems were sufficient. Our litigants make choices here. And we brought those up in two of the three. Of course, this court agreed. There is that validity issue then, however, was pending on re-examination. In fact, Judge Dyke, at the end of the first argument, you may recall, you asked counsel for E-plus, well, aren't you going to speed up that re-examination proceeding so we know whether this patent's even valid? And they said no. They don't want to do that because they wanted to run back and try to get contempt sanctions. Because this whole problem is a problem that E-plus is making. I should point that out. We have asked to either stay or otherwise reserve these proceedings no fewer than 10 times based on the re-examination. Before trial, at trial, after trial, in the first appeal, after the first appeal. Motions to stay. And the district court kept rejecting it. And they kept refusing. And the board took like seven years? The board took a long time, Your Honor. We were not the requester. So we weren't parties. We were standing on the sidelines watching. It came to this court. This court, as Judge Prost knows, affirmed. And that cancellation is now final as of last week. That's not, you know, the timing is neither here nor there, however, because we are here on direct appeal. We have no patents that are enforceable. And the United Mine Workers case is absolutely clear. I mean, if we look at it, if we had two appeals, which we do, if they were separated, we first came up on the injunction appeal. Precedent is absolutely clear. The injunction just has to be reversed. I mean, we would submit no way around that. In fact, they never made any argument to the contrary. If we had the contempt appeal, precedent is equally clear. Under United Mine Workers and Wharton, once an injunction is reversed, you can't have civil contempt. I mean, let me close before I get to rebuttal. This is a direct quote, again, from the Supreme Court Wharton v. Searle patent case, where the patent has been invalidated. Quote, the injunction was unwarranted as a matter of law. And the orders imposing the fines for civil contempt cannot be upheld. There is no way around Wharton v. Searle's in this case. It's the same facts as we have here, and it's Supreme Court precedent that demands it. In addition to Fresenius and Mendenhall and Translogic and all of that, an injunction, unlike damages, has no vested rights attached to it. The Supreme Court said that in Landgraab. So we don't have the problem that the members of this court have been debating in Fresenius. There is simply a non-final order that cannot be sustained in light of the total absence of property rights. I'd like to reserve the balance of my time. OK. Mr. Stratton. May it please the court. The injunction in this case was entered nearly three years ago. That injunction has never been stayed, and it was affirmed by this court. How do you distinguish Wharton? Wharton v. Searle's was a direct appeal regarding the validity of the patent that was challenged by the adjudged infringer from the district court all the way out up to the Supreme Court. The Supreme Court held that the injunction was erroneous when entered because the patent upon it, which was founded, was invalid. That's not the situation we have here. But the injunction is on direct appeal. There's no dispute about that. Your Honor, what's on direct appeal is Lawson's Rule 60B motion, which is a motion from a final judgment. And the final judgment from which Lawson filed its Rule 60B motion was this court's affirmance in relevant part. But they appealed the injunctive order, right? They appealed the denial of the Rule 60B motion. I thought they appealed also the injunction. No, Your Honor. The appeal with respect to the injunction is solely with respect to the denial of the Rule 60B motion. There's a separate appeal that has a different number that was consolidated that concerns the contemptor. But insofar as the injunction is concerned in this case. I'm sorry. That's not my understanding. Could you explain that? Go back a moment. The original appeal held that the systems claims or the device claims couldn't stand. And what it left was a method claim. And we remanded to have a determination made as to the effect of that on the injunction. And one of the issues there is whether you could have an injunction barring sales where you were just alleged to confront a method claim, right? That was part of the basis for Lawson's Rule 60B motion on remand. But that's one of the issues before us now. That's correct. OK. So show us why this is limited to the Rule 60B context. Because that wasn't my understanding. I may be wrong about it. Well, Your Honor, we think. Take us through that. Show us where does the notice of appeal say that we're limited to the Rule 60B motion? I think that this gets back to an important distinction between the holding of this court in Fresenius. No, no. And the facts there. I didn't ask you that. I want you to take me through. I want you to show me that this is simply a Rule 60B motion and not an appeal from the injunctive court. Lawson argued in the original appeal that the district court's grant of an injunction was too broad. I want you to show me why this is limited to a Rule 60B motion. Your Honor, Lawson's challenge to the injunction was rejected by this court. No, that's not the issue. They say it. We sent it back to reconsider the injunction. My understanding is that on the remand, they argued that the injunction should be considerably narrower, even with respect to configurations three and five, because you no longer have any device or systems claims. And that the district court said, no, no. The only thing I'm going to do to this injunction is remove configuration two, right? That's correct. And they're appealing from that, right? That's correct. You say there's no appeal from the entry of the injunction. There's only a Rule 60B. Show me where in the record. We think it gets down to the word vacate. And if you look at the mandate, there was no vacater of the injunction here. I'm not talking about the mandate. I'm saying, where in this record on the remand does it tell me that there's no appeal from the injunction? Well, Your Honor, the memorandum opinion and the order upon which Lawson found its appeal is found in A1. That's the order modifying the order of the injunction entered on May 23, 2011. And at A6, which is the opinion which is founded upon that order, the court states in its first paragraph at A6, at the end, the last sentence, that for the reasons and to the extent set forth below, the injunction will be modified, and Lawson's motion pursuant to Rule 60 to dissolve or modify the May 23, 2011 injunction will be denied. What was at issue was the May 23, 2011 injunction, not some new injunction that was entered by the court on remand. And we think that that's important. I know there was a Rule 60 motion, and it was denied. But how do I know that the appeal here with respect to the injunction is limited to the Rule 60 motion? Lawson's appeal was an appeal concerning the order at A1, the memorandum opinion at A6. And that appeal was consolidated with a contempt appeal. Insofar as the appeal taken from the order denying Lawson's motion, Rule 60b, concerned that motion and didn't concern anything else, I think it's sort of self-evident from the rule, the order, and the memorandum opinion itself. But if I could. Do I understand what happened below is that the trial court concluded that since we didn't vacate the injunction, the reconsideration of the injunction related to moving forward, going forward. Yes, Your Honor. And then the 60b said, well, let's look back, too. That's what Lawson, that was the relief that Lawson requested. Lawson asked for the injunction to be dissolved ab initio. And the district court found that that was not within the scope of its power under the mandate set forth by this court. In fact, this court didn't even use the word reconsider. It used the word consider. It said, consider what changes are necessary to the terms of the injunction, which presupposed the continuing existence of the injunctions. In contrast, in Fresenius, this court vacated the damage award and vacated the injunction and remanded for reconsideration as to whether the injunction should be imposed and how it should be imposed. And you're not arguing that there could be any forward looking injunction anymore? We are not arguing. So to the extent that they were appealing from that conclusion, that's moot. That's correct, Your Honor. Now, turning to United Mine Workers, which my brother focused on here. United Mine Workers, the reference to United Mine Workers is dicta. It is not the holding in United Mine Workers. We have said repeatedly that when the Supreme Court tells us what to do in dicta, we do it. OK. And the dicta there in United Mine Workers, regarding an erroneous injunction and the suggestion that the right to remedial relief falls when it's founded upon an erroneous injunction, doesn't have application here. And let me explain why. Neither the injunction nor the finding of invalidity, in this case, as entered by the district court, was erroneous. Lawsons challenged to the injunction. They challenged the breadth of that injunction. That was rejected by this court. And Lawson never even appealed the validity of Claim 26. Now, the fact that an administrative agency, employing a different legal standards and a different burden of proof under a different factual record, concluded that Claim 26 was invalid, cannot retrospectively mean that a decision by a district court affirmed by this court was erroneous. It sounds as though you're re-arguing proceedings. Your Honor, Fresenius turned on the finality of the judgment. That was the holding in Fresenius. And the question was, was the judgment final or not, so as to preclude the implication of the cancellation of the claim? So do you agree, then, that if the judgment were not final as to the injunction, that this would be like Fresenius? Yes, Your Honor. That's one of the key points that we believe distinguishes this case from Fresenius, that in Fresenius, this court had vacated the injunction and there was no such vacator, just by the plain language of the mandate in the two cases. So it all turns, in your view, on whether the injunction became final. Well, the injunction doesn't have to be final in its entirety, but it has to be final with respect to the claim upon which contempt was found. That was Claim 26, and the configurations which infringe that are Configurations 3 and 5. And our view is that insofar as this court affirmed the infringement finding as to Claim 26 and rejected Lawson's challenge regarding the scope of the injunction and never vacated the injunction, that those facts taken together can lead to no other conclusion but that the injunction, insofar as it concerned that claim and those configurations, was final. I'm having difficulty with that, because in the original case, we said that there was infringement of Claim 26 not by the sale of the product, but by various communications between Lawson and its customers. So we have an injunction here which bars sale. It doesn't just bar what we found to be infringing. So is there not a significant question as to whether the injunction is in proper form? Your Honor, we read this court's opinion in 2012 slightly differently in the sense that this court found that there was substantial evidence of infringement of Claim 26 that included direct performance of the method by Lawson through demonstrations, installations, as well as its customers. It did not say that the sale of the product was an infringement of Claim 26. That's correct, and the sale of a product would not be an infringement of a method claim, and we agree with that principle. But the problem is that the injunction bars the sale of products incorporating Configurations 3 and 5, which seems to be inconsistent with our original decision and potentially grounds for changing the injunction. Your Honor, this court, both in the I4I case as well as the MPT case, affirmed injunctions prohibiting the sale of infringing products when all that was at issue were method claims that had been infringed. That's not a problem because that's what this court's precedent teaches is permissible within the scope of an injunction as it concerns only a method claim. Now, turning to TiVo, because we believe TiVo also is important here. It's the foundation for the contempt proceeding. A contempt proceeding under TiVo doesn't open to reconsideration the legal or factual basis for the order alleged to be infringed. If we accept that in 2012 this court resolved certain issues with respect to damages on E-Plus's cross-appeal, with respect to Lawson's challenge to the injunction, with respect to infringement of Claim 26, those issues are not reopened as part of this contempt proceeding. And under Fresenius, the cancellation of Claim 26 doesn't impact retrospectively a final judgment. Now, Fresenius did suggest that there's a concept of void ab initio when a patent claim is cancelled in reexamination. But that court acknowledged that whatever impact cancellation may have, it cannot reach back so far as to affect a final judgment. And that matters here. Furthermore, Section 307A of the reexamination statute, which actually concerns what happens when a claim is cancelled, makes no mention whatsoever about any retrospective impact of cancellation. Furthermore... But in Fresenius, there was retrospective impact in the sense that it wiped out a damages judgment that had been entered before the cancellation, right? It was retrospective only in the sense that this court said that that damages judgment was not final and that the suit was therefore pending for purposes of the impact of the cancellation of the claim. But E-Plus challenged the damages award, or the lack thereof, on the cross-appeal, and that challenge was rejected. And that challenges the issues of damages are final. There's a final damages judgment in this case, unlike in Fresenius. Now, the Supreme Court has said in Walker v. Birmingham the subsequent abrogation of an injunction upon which contempt is finding doesn't excuse prior contempt. Walker is a criminal case. That's a criminal case. What does it have to do with this? Well, the holding of Walker has also been adopted in the 8th Circuit line of cases of Coleman, McBride, and Klett. And now, as my colleague points out, those were legislative cases where an injunction was mooted by subsequent changes in the law. But we believe that those cases are directly analogous to the situation here. Is it not different when Congress repeals a statute in terms of whether or not it was valid? Don't you think there's a distinction between that and when the Patent Office says this patent was never valid, this is an invalid patent? We don't believe so because it's well settled that retroactivity is not favored in the law. As Mr. Perry mentioned, legislative is presumptively prospective, not retrospective. But so too are the actions of an agency. The PTO here canceled Claim 26 and a cancellation certificate handed down last week. The Supreme Court's held in Bowen v. The Patent Office is saying this patent was never valid, right? Are they saying it was valid for the first five years and now it's no longer valid? No, if you look at the face of the cancellation certificate, all it says is that Claim 26 is canceled. It doesn't say anything about retrospective impact. And the Supreme Court said in Bowen v. Georgetown University Hospital that the grant of rulemaking authority delegated from Congress to an agency such as the PTO is presumptively prospective unless there's express delegation of retrospective impact. But the argument's inconsistent with Frazedius. If this argument were true in Frazedius, then there would be nothing wrong with getting past damages before the cancellation. And we said no under the statute and the history of it that the thing means that it was never valid in the first place. If in Frazedius this Court meant that void ab initio really was void ab initio that obliterated the past existence of the patent, then even if a damages judgment was at the point at which it could be executed upon and the patent at that point was declared invalid and canceled by the PTO, there would be no collecting on that damages judgment. But if it was prospective only, why couldn't you collect damages for the period before the cancellation? Because for pending suits and for future suits based on the canceled claim, cancellation renders that void ab initio. The void ab initio, as it's used in Frazedius, as it's referred to in dicta and standard havens, talks about pending and future suits. It doesn't talk about final judgments as this Court recognized in Frazedius. It doesn't talk about final damages determinations. It doesn't talk about suits like this one here where issues as to damages were not on the table when we got to the contempt proceeding. Now, on September 19, 2013, this Court in docket entry number 29 ordered Lawson to comply immediately with the contempt order. That order had required Lawson to stop using the modified RQC configurations. Well, EPLUS showed in docket entry 30 in a motion that Lawson has continued to sell these modified configurations. Under Supreme Court precedent, no party may violate a court order even if they believe that order has no validity whatsoever with immunity from a charge of contempt. Yet Lawson has violated this Court's order for the past few months and has violated an injunction that was never stayed and that was never vacated for three years. If Lawson... I think we're out of time. Thank you. Lawson has been in compliance with this injunction for every single day, but it doesn't matter because the terms of section 307A are the patent, the claim is unpatentable. It's not an expiration. My friend is confusing expiration with cancellation. But let me take this argument to its extreme. So what you're saying is that if at any time in a re-exam the PTO cancels a claim, that every lawsuit, even if it was 10 years ago, and final 10 years ago, is wiped out and whoever got damages has to pay it back. No, Your Honor. Isn't that the logical extreme here? No, Your Honor, because at some point, as all the members of this Court agreed, Moffitt v. Garr kicks in and there are rights inherent in the judgment when the judgment is actually final. And this Court defined a final judgment in Fresenius. A quote, the judgment is not final until, quote, the mandate ending the litigation has issued. That's when finality kicks in. There is no final judgment in this case. We are here today on two direct appeals. Why did you file a Rule 60B motion if you didn't think there was a judgment that you were trying to set aside? Your Honor, this Court's first opinion ends. The case is remanded with instructions to what changes to the injunction are required in light of our opinion. No, to consider whether... To consider whether changes are required. We brought the Rule 60 motion as a procedural vehicle to put that before the Court. The District Court acknowledged that on the record at the hearing of the transcript. It was simply a convenient way to say, now change this. And we sought at that time dissolution and modification of the injunction on the grounds, among many others, that the reexamination was pending. We also pointed out that wiping out the system claims took out 80% of the products. It takes out the causal necklace requirement from Apple versus Samsung because they admit that the remaining method claims aren't important. You know, and so forth. The Court denied that motion and then issued a modified injunction. And we immediately appealed from that order. And Judge Dyke, for your very first question from my friend that he couldn't answer, A6722 is our notice of appeal, which says we are appealing from the order modifying the injunction and denying the Rule 60B motion. And our statement of jurisdiction... What page is that at? A6722. Which volume? 2. Our statement of jurisdiction, which EPLUS never challenged, pointed out that this Court has jurisdiction under 1292A1 and C1 for the injunction order, which of course provide that any order refusing or modifying an injunction is appealable. So this is a direct appeal as a matter of right from an order modifying an injunction. So I just want to understand so that we're all on the same page here. You're not... You believe that your position does depend on the underlying judgment not being final. That's correct, Your Honor. So you have to fit into Fresenius. We are in Fresenius. This is an easier case than Fresenius. I understand that, but you're not arguing that the PTO could retroactively undo a final judgment. No, Your Honor. And we don't have to here because there wasn't... I mean, this Court did not end its decision with affirmed. This Court ended its decision with remanded. It specifically contemplated for the proceedings. That was Mendenhall, which to this day EPLUS has never addressed in argument or in briefing. And what the Court said in Mendenhall, the judgment of this Court on liability that resulted in a remand for further proceedings was not the final judgment in the case. That's a direct quote. And in that case, the accused infringer did not challenge validity in the first appeal. The appeal was vacated in Mendenhall. Your Honor, it was vacated in the second appeal, yes. And what the holding was in Mendenhall was not just that it was moot, but that the former patent holder, once stripped of its patent rights, was collaterally stopped from even asserting validity. So all of this argument that you heard from Mr. Straff is nonsense because it's inconsistent with Mendenhall. What we have here is a contempt section. Let me come back to Mineworkers. It says civil compensatory contempt must be based on the complainant's actual loss. In a patent context, under 282, that has to be actual loss from patent infringement because an injunction can only secure rights by patent. They have no patent. Therefore, they have no actual loss. Therefore, they cannot get contempt sanctions. All of this must be undone. Thank you, Your Honor. Thank you, Mr. Perry. Thank both counsel. The case is submitted. And that concludes our session. All rise. The Honorable Court is adjourned from day today.